**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Spirit Master Funding VIII, LLC, | No. CV-18-01012-PHX-JJT |
| Plaintiff/Counter Defendant, | **ORDER** |
| v. | |
| Kelly Restaurant Group, LLC | |
| Defendant/Counter Claimant. | |

Pending before the Court is Plaintiff ("Spirit")'s Motion for Summary Judgment. (Doc. 29, "Motion" or "Mot.") Having considered the Motion, Defendant ("KRG")'s Response (Doc. 31, "Response" or "Resp."), Spirit's Reply (Doc. 34, "Reply"), and the evidence of record, the Court will grant the Motion.

**I.    BACKGROUND**

In early 2014, KRG, a corporate restaurateur, sought new markets in Kansas and Oklahoma. Having identified a seemingly prosperous opportunity, it reached out to Spirit with a proposition for sale leaseback financing in which Spirit would purchase several restaurants and lease them back to KRG to operate. On June 30, 2014, Spirit and KRG executed an "Amended and Restated Master Lease Agreement" (Doc. 30-1, "Lease"), a 20-year lease agreement that amended and restated a prior lease agreement executed earlier that month. (Lease at 1.) Under the Lease, KRG was to pay an annual rent of $1,112,000.00 in monthly installments on or before the first day of each calendar month, all costs and expenses related to the leased properties, and all taxes and assessments on the leased

properties. (*Id.* at 1, 5, 9.) The following constituted an "Event of Default" under the Lease: "if any Rental or other Monetary Obligation due under this Lease is not paid when due"; "if [KRG] fails to pay, prior to delinquency, any taxes, assessments or other charges the failure of which to pay will result in the imposition of a lien against of the Properties"; or "if [KRG] vacates or abandons any Property." (*Id.* at 32–33.) Upon the occurrence of an Event of Default, Spirit could terminate the Lease as well as "accelerate and recover from [KRG] all Rental and other Monetary Obligations due and owing and scheduled to become due and owing under this Lease both before and after the date of such breach for the entire original scheduled Lease Term." (*Id.* at 34–35.) Moreover, the Lease stated, "No provision of this Lease shall be deemed waived or amended except by a written instrument unambiguously setting forth the matter waived or amended and signed by the party against which enforcement of such waiver or amendment is sought." (*Id.* at 51.)

On January 19, 2017, Spirit notified KRG that it was in default of the Lease for failing to pay rent for December 2016 and January 2017 and for failing to pay the property taxes for 2016. (Doc. 30, Pl.'s Statement of Facts ("PSOF") ¶ 11; Doc. 30-5 at 1.) On July 7, 2017, Spirit again notified KRG that it was in default for failing to pay rent for May, June, and July 2017 and for failing to pay the property taxes. (PSOF ¶ 12; Doc. 30-6 at 1.) The parties executed an amendment to the Lease on September 13, 2017. (Doc. 30-3, "First Amendment.") The First Amendment expressly acknowledged KRG's failure to make rent payments for June, July, and August of 2017, totaling $291,172.98. (First Amendment at 1.) It further acknowledged KRG's failure to pay property taxes and reaffirmed that KRG "shall be and remain responsible for the continued payment of real property taxes and assessments with respect to the Properties pursuant to, and in accordance with, the applicable terms and provisions of the Lease." (*Id.*) It provided that as a condition precedent to its effectiveness, KRG had to pay $97,617.30 of the delinquent rent within two days of mutual execution and delivery of the First Amendment. (*Id.*) KRG had until December 31, 2017, to pay the remaining $193,555.68. (*Id.*) By September 28, 2017, KRG had paid the initial payment of $97,617.30. (Doc. 30-12, "Ledger" at 2; Doc. 30-10 at 2–

3.) The First Amendment also ratified the Lease except to the extent that it had amended the Lease therein. (*Id.* at 5.)

Additionally, and of particular significance here, the First Amendment provided for an improvement allowance in which Spirit would reimburse KRG for improvements KRG made to the properties. (*Id.* at 2.) The terms and conditions of the improvement allowance were governed by a separate "Contribution Agreement" (Doc. 30-9, "Contribution Agreement") executed concurrently with the First Amendment. (First Amendment at 3.) In order to be eligible for reimbursement, KRG had to submit a "Disbursement Request" containing: "(i) an itemization of the Costs; (ii) copies of all invoices representing the Costs; [and] (iii) final unconditional lien waivers from all contractors, subcontractors, and materialmen." (Contribution Agreement at 3–4.) Notably, the Contribution Agreement provided that "if [KRG] is in default of this Agreement or the Lease at the time of any Disbursement Request, [Spirit] shall have no obligation to disburse the Improvement Allowance to [KRG]." (*Id.* at 3.)

Following execution of the First Amendment and Contribution Agreement, Spirit again notified KRG on November 20, 2017 that it was in default for failing to pay rent for August, October, and November 2017 and for failing to pay the delinquent taxes. (Doc. 30-11 at 1.) The parties began to negotiate a third amendment to the Lease in early 2018.[1] (*See* Docs. 30-18, 30-19, 30-20, 30-23.) Negotiations, however, failed and no finalized document was ever executed. (Doc. 30-24.) Spirit brought suit on March 30, 2018 claiming breach of lease (contract), breach of the covenant of good faith and fair dealing, and unjust enrichment in the alternative. (Doc. 1, Compl. ¶¶ 23–37.) KRG counterclaimed breach of contract, breach of the covenant of good faith and fair dealing, promissory estoppel, and unjust enrichment. (Doc. 13, Countercl. ¶¶ 21–41.) Spirit formally terminated the Lease and Contribution Agreement on July 30, 2018. (Doc. 30-25.) Spirit now moves for

---

[1] A second amendment to the Lease was executed on October 6, 2017. (Doc. 30-4.) This amendment removed a certain property from the Lease and decreased the annual rent to $1,083,618.66. (*Id.* at 1.) Like the First Amendment, this amendment also ratified the terms of the Lease except to the extent they had been amended. (*Id.* at 3.)

summary judgment on both parties' breach of contract claims (Mot. at 6–11), KRG's breach of the covenant of good faith and fair dealing counterclaim (Mot. at 11–12), KRG's promissory estoppel counterclaim (Mot. at 13–14), and KRG's unjust enrichment counterclaim (Mot. at 14–16).

## II. LEGAL STANDARDS

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate when: (1) the movant shows that there is no genuine dispute as to any material fact; and (2) after viewing the evidence most favorably to the non-moving party, the movant is entitled to prevail as a matter of law. Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Eisenberg v. Ins. Co. of N. Am.*, 815 F.2d 1285, 1288–89 (9th Cir. 1987). Under this standard, "[o]nly disputes over facts that might affect the outcome of the suit under governing [substantive] law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "genuine issue" of material fact arises only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.*

In considering a motion for summary judgment, the court must regard as true the non-moving party's evidence if it is supported by affidavits or other evidentiary material. *Celotex*, 477 U.S. at 324; *Eisenberg*, 815 F.2d at 1289. The non-moving party may not merely rest on its pleadings; it must produce some significant probative evidence tending to contradict the moving party's allegations, thereby creating a material question of fact. *Anderson*, 477 U.S. at 256–57 (holding that the respondent must present affirmative evidence in order to defeat a properly supported motion for summary judgment); *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968).

"A summary judgment motion cannot be defeated by relying solely on conclusory allegations unsupported by factual data." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). "Summary judgment must be entered 'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on

which that party will bear the burden of proof at trial.'" *United States v. Carter*, 906 F.2d 1375, 1376 (9th Cir. 1990) (quoting *Celotex*, 477 U.S. at 322).

The interpretation of a written contract is a question of law. *Carrothers Constr. Co. v. City of South Hutchinson*, 207 P.3d 231, 239 (Kan. 2009); *Dodson v. St. Paul Ins. Co.*, 812 P.2d 372, 376 (Okla. 1991).[2] The contract will be enforced according to what the parties intended. *Carrothers*, 207 P.3d at 239; *Dodson*, 812 P.2d at 376. When the terms of the contract are clear and unambiguous, the intent of the parties is ascertained from the language of the contract, without reference to extrinsic evidence. *Carrothers*, 207 P.3d at 239; *Dodson*, 812 P.2d at 376.

## III. ANALYSIS

### A. KRG Failed To Comply With Local Rule Of Civil Procedure 56.1.

By failing to cite to particular evidence in the record to support disputed facts in its Statement of Facts (Doc. 32, Def.'s Statement of Facts ("DSOF")) and by failing to cite to its SOF in its Response, KRG has failed to comply with LRCiv 56.1(b) and 56.1(e), respectively.

In opposing a motion for summary judgment, a nonmoving party has the burden of showing a genuine issue of triable fact exists to overcome entry of summary judgment. *See Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996). The Court "rel[ies] on the nonmoving party to identify with reasonable particularity the evidence that precludes summary judgment." *Id.* The Court need not assume this burden and "scour the record in search of a genuine issue of triable fact." *Id.*; *see also Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001) (holding that it would be "unfair" to require the district court "to search the entire record" if a party fails to "disclose where in the record the evidence for [the factual claims] can be found"). Hence, LRCiv 56.1(b), in pertinent part, provides:

---

[2] A choice of law provision in the Lease provides that the Lease shall be "governed by" and "construed with" the laws of the state in which a property is located. (Lease at 52.) Because the properties at issue are in Kansas and Oklahoma, the Court will apply Kansas and Oklahoma law. (*See* PSOF ¶ 2.)

> Any party opposing a motion for summary judgment must file a statement, separate from that party's memorandum of law, setting forth: (1) for each paragraph of the moving party's separate statement of facts, a correspondingly numbered paragraph indicating whether the party disputes the statement of fact set forth in that paragraph *and a reference to the specific admissible portion of the record supporting the party's position if that fact is disputed* . . . .

(emphasis added). Moreover, LRCiv 56.1(e) provides:

> Memoranda of law filed . . . in opposition to a motion for summary judgment . . . must include *citations to the specific paragraph in the statement of facts* that supports assertions made in the memoranda regarding any material fact on which the party relies . . . in opposition to the motion.

(emphasis added). Where a nonmoving party fails to specifically identify and cite evidence raising a genuine issue of triable fact in its response to the motion, the Court may properly enter summary judgment against it. *See Carmen*, F.3d at 1031. Here, however, despite KRG's failure to comply with the foregoing, the Court will decide the case on its merits.

### B. Spirit Is Entitled To Summary Judgment On Its Breach Of Contract Claim And KRG's Breach Of Contract Counterclaim.

Under Kansas law, "[t]he elements of a breach of contract claim are: (1) the existence of a contract between the parties; (2) sufficient consideration to support the contract; (3) the plaintiff's performance or willingness to perform in compliance with the contract; (4) the defendant's breach of the contract; and (5) damages to the plaintiff caused by the breach." *Stechschulte v. Jennings*, 298 P.3d 1083, 1098 (Kan. 2013). Under Oklahoma law, the elements are substantively identical: (1) formation of a contract, (2) breach of the contract, and (3) damages directly resulting from the breach. *Dig. Design Grp., Inc. v. Info. Builders, Inc.*, 24 P.3d 834, 843 (Okla. 2001).

#### 1. Spirit is entitled to summary judgment on its breach of contract claim.

Here, Spirit alleges a breach of contract based on KRG's alleged failure to pay rent and taxes as required by the Lease. (Mot. at 6; Compl. ¶¶ 14, 26.) In response, KRG alleges that the Lease had been amended via an email exchange dated February 9, 2018

(Doc. 30-20, "February Email") in which Spirit had "waived" any past due rent and converted the Lease into a "gross lease" in which KRG did not have to pay taxes.[3] (Doc. 30-21, "Interrog. Resp." at 2:13–16.) KRG contends it fully performed under this "modified" version of the Lease. (*Id.* at 2:16–17.)

The Court finds KRG has not pointed to evidence supporting its contentions. Contrary to KRG's assertion, the February Email did not relieve it of liability for delinquent rent and taxes as nowhere does the February Email indicate such a proposition. Provisions of the Lease mandating payment thereof were therefore still in effect. The only modification made by the February Email was the rental rate going forward, as evident by KRG's offer therein of a reduced annual rate of $1,000,000.00 and Spirit's subsequent acceptance of two monthly installments of $83,333.33 under that new rate. (February Email at 1; Ledger at 3.) Because no written agreement between the parties and signed by Spirit excused KRG from paying the delinquent rent and taxes it was obligated to pay under the Lease, the Court grants summary judgment in favor of Spirit on its breach of contract claim.[4]

### 2. Spirit is entitled to summary judgment on KRG's breach of contract counterclaim.

KRG alleges that "after a successful negotiation" of a third amendment to the Lease, "the parties reached an agreement in which Spirit promised KRG rent reductions and payment by Spirit for certain tenant improvements," referring to the February Email. (Resp. at 4.) KRG maintains that it upheld its end of this "agreement" by paying rent at the agreed-

---

[3] In its response to an interrogatory, KRG cites "KRG001935 – KRG001936." (Interrog. Resp. at 2:18–19.) This evidence is not in the record.

[4] A later email from Spirit to KRG stated, "[T]he deal was we paid your 2016 taxes ~400k and forgive ~500k in rent. We never agreed to pay your 2017 taxes." (Doc. 30-24 at 1.) This statement by itself is not an agreement. While it could serve as parol evidence of a partially integrated agreement, KRG points to no such agreement in the first place. The February Email, as discussed, did not excuse KRG's monetary obligations under the Lease.

upon rate, but that Spirit breached the "agreement" by failing to reimburse KRG for the approximately $250,000 it expended on improvements. (*Id.* at 6.)

The Court again finds in favor of Spirit. While the February Email and the parties' subsequent performance indicated they agreed to a new rental rate, nothing in the February Email indicates that Spirit would unconditionally fund improvements undertaken by KRG. In fact, KRG stated in the February Email that it would "go through the regular draw request process for construction funding." (February Email at 1.) Both parties agree that the Contribution Agreement governed "improvements to the Properties and Spirit's payments to KRG of a tenant improvement allowance." (DSOF ¶ 18.) Thus, the Court interprets KRG's statement to mean that it would comply with the terms of the Contribution Agreement with respect to submitting draw requests for improvement funding.

On February 9, 2018–the same day as the February Email–KRG submitted a Disbursement Request for $96,239.96, which was signed by KRG's CEO, Michael Kelly. (Doc. 30-15, "DR".) On November 20, 2017, however, Spirit had notified KRG that it was in default under the Lease for failing to pay rent for August, October, and November of 2017 and delinquent taxes. (Doc. 30-11.) Mr. Kelly testified that KRG had not cured these defaults by February 9, 2018, the day KRG submitted the DR. (Doc. 30-2, "Kelly Dep." at 19:6–16.) Thus, pursuant to the terms of the Contribution Agreement and given the lack of any valid agreement to the contrary, Spirit was within its contractual rights to deny funds for the DR.[5] Accordingly, the Court grants summary judgment in favor of Spirit on KRG's breach of contract counterclaim.

---

[5] Additionally, but ultimately immaterial in light of the foregoing, the DR was apparently deficient, as noted by Spirit in an email to KRG in which it stated that it had only received eighteen invoices from KRG and needed invoices and receipts for all charges listed, expense reports detailing project management charges, and unconditional lien waivers from contractors and subcontractors in order to process the DR. (Doc. 30-17.) When questioned about the invoices, Mr. Kelly stated, "There's an explanation of every invoice on here. Was there a copy of the dumpster rental for $575? No. But it's all itemized here by date and by amount and by who it's paid to," referring to Schedule 1 of the DR. (Kelly Dep. at 17:11–17, *see* DR at 3–5.) With respect to the lien waivers, Mr. Kelly stated, "We had a girl working for us at the time whose sole job was to take care of that during

### C. Spirit Is Entitled To Summary Judgment On KRG's Breach Of The Covenant Of Good Faith And Fair Dealing Counterclaim.

KRG claims that Spirit breached an implied covenant of good faith and fair dealing through "bad faith negotiations and misrepresentations to KRG regarding the restaurants." (Countercl. ¶¶ 28–29.)

Both Kansas and Oklahoma recognize an implied covenant of good faith and fair dealing in contracts. *First Nat. Bank of Omaha v. Centennial Park, LLC*, 303 P.3d 705, 716 (Kan. Ct. App. 2013); *First Nat. Bank and Trust Co. of Vinita v. Kissee*, 859 P.2d 502, 509 (Okla. 1993). Under Kansas law, the parties must "refrain from intentionally doing anything to prevent the other party from carrying out his or her part of the agreement, or from doing anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *Centennial Park*, 303 P.3d at 716. Similarly, under Oklahoma law, the parties must not "act to injure the parties' reasonable expectations nor impair the rights or interests of the other to receive the benefits flowing from their contractual relationship." *Kissee*, 859 P.2d at 509.

Here, Spirit argues that KRG's counterclaim for breach of the covenant of good faith and fair dealing is "entirely duplicative and reliant on its failed breach of contract claims" and thus "fails as a matter of law." (Mot. at 12.) Moreover, Spirit argues that KRG could not have had any "reasonable expectation" that it would receive a tenant improvement allowance "because it failed to submit invoices and unconditional lien waivers as required under the Contribution Agreement" and "because no amendment was executed excusing KRG's defaults." (*Id.*) In response, KRG merely states that if the Court denies summary judgment on the breach of contract claims, then Spirit's first argument fails. (Resp. at 8.) It then reiterates that it indeed "expected to receive reduced rent

---

construction projects. And again just like you're not showing me the 18 invoices, everything they requested we sent. We may not have kept copies that we provided for - - for discovery, but we did everything we were asked to do by Spirit." (Kelly Dep. at 18:11–17.) Thus, there exist issues of fact regarding whether KRG's DR was deficient. However, given that KRG was in default at the time of the DR's submission, these facts are immaterial.

- 9 -

payments and the Tenant Improvement allowance promised by Spirit." (*Id.*) KRG cites no legal authority or evidence in support of its contentions.

The Court again finds in favor of Spirit. First, because Spirit did not breach any contract, it therefore did not breach the covenant of good faith and fair dealing. *See Chapman v. Chase Manhattan Mortg. Corp.*, No. 04-CV-0859-CVE-FHM, 2007 U.S. Dist. LEXIS 70655, at *33–34 (N.D. Okla. Sept. 24, 2007) (discussing Oklahoma state court cases and granting summary judgment against a plaintiff's good faith and fair dealing claim where plaintiff had not shown defendant breached the contracts at issue). Second, because the Contribution Agreement governed the terms and conditions under which KRG was entitled to disbursements from the improvement allowance, and because pursuant to the Contribution Agreement KRG was not entitled to such funds at the time it submitted its DR, its counterclaim for breach of the covenant of good faith and fair dealing necessarily fails. To elaborate, both Kansas and Oklahoma prohibit a party from injuring the right of the other party to receive the benefit of the contract. Here, there is no evidence establishing that Spirit engaged as such. There was no affirmative action taken by Spirit to ensure that KRG would not be entitled to its rights and benefits under the contract. Rather, Spirit simply acted within its rights under the Contribution Agreement, which both Spirit and KRG had agreed to, to withhold the disbursement funds because of KRG's default under the Lease. Thus, there is no violation of the covenant of good faith and fair dealing here. Therefore, the Court grants summary judgment in favor of Spirit on KRG's counterclaim for breach of the covenant of good faith and fair dealing.

**D.  Spirit Is Entitled To Summary Judgment On KRG's Promissory Estoppel Counterclaim.**

In the Counterclaim, KRG alleges that in reliance on "Spirit's representations made in the [February Email], in which Spirit promised it would amend the [Lease] and make payments of the tenant improvement allowances, KRG made two payments of $83,333.33 each and began construction of tenant improvements, all to its detriment." (Resp. at 7.)

Under Kansas law, a claim of promissory estoppel requires showing that: "(1) The promisor reasonably expected the promisee to act in reliance on the promise, (2) the promisee acted as could reasonably be expected in relying on the promise, and (3) a refusal of the court to enforce the promise would sanction the perpetration of fraud or result in other injustice." *Mohr v. State Bank of Stanley*, 770 P.2d 466, 481 (Kan. 1989). Similarly, Oklahoma law requires: "(1) a clear and unambiguous promise, (2) foreseeability by the promisor that the promisee would rely upon it, (3) reasonable reliance upon the promise to the promisee's detriment and (4) hardship or unfairness can be avoided only by the promise's enforcement." *Russell v. Bd. of Cty. Comm'rs*, 952 P.2d 492, 503 (Okla. 1997).

Here, Spirit argues that KRG's promissory estoppel claim is barred as a matter of law because it is based upon subject matter that is covered by the Lease and Contribution Agreement. (Mot. at 14.) Spirit also argues that "KRG cannot show detrimental reliance or that it acted reasonably as a matter of law" because: (1) KRG was under a pre-existing legal obligation to pay rent under the Lease and (2) KRG could have not have "reasonably" expected to obtain tenant improvement funds when it failed to comply with terms of the Lease and Contribution Agreement it entered into. (*Id.*) Moreover, Spirit argues that "KRG did not rely (reasonably or otherwise) on the alleged promises in the [February Email] because it is undisputed that KRG constructed its tenant improvements over a month before the [February Email]." (Reply at 9 (citing PSOF ¶ 22).)

The Court again finds in favor of Spirit. Indeed, as previously discussed, disbursements under the tenant improvement allowance were governed by the terms of the Contribution Agreement. Moreover, rental payments were the subject of the Lease, notwithstanding that the February Email, as discussed, modified the amount. The obligation to pay rent was created by the Lease and no subsequent agreement removed that obligation. Thus, KRG's promissory estoppel claim fails as a matter of law because, here, there is no absence of an enforceable contract governing the subject matter of the promissory estoppel claim. *See Pizza Mgmt., Inc. v. Pizza Hut*, 737 F. Supp. 1154, 1167–68 (D. Kan. 1990) (dismissing a claim of promissory estoppel where the claim was based

upon promises existing in enforceable agreements, stating that promissory estoppel is an equitable doctrine "applicable only in the absence of an otherwise enforceable contract").

KRG's promissory estoppel claim also fails because it cannot show that each element is satisfied under Kansas or Oklahoma law. First, the February Email contains no promise by Spirit to unconditionally reimburse KRG for the improvements. Rather, the reimbursement was governed by the terms and conditions of the Contribution Agreement. Second and relatedly, KRG cannot show reasonable reliance on any purported "promise" in the February Email. KRG, having signed the Contribution Agreement, was aware of the terms and conditions under which it would receive disbursements. KRG also was aware of its default under the Lease. (Kelly Dep. at 19:6–16.) Thus, it cannot argue it had any reasonable expectation of receiving disbursements under these facts. Moreover, the two rental payments of $83,333.33 cannot have been made "in reliance" on receiving disbursement funds because KRG was under a pre-existing obligation to pay those monies under the terms of the Lease. Lastly, it cannot be said that KRG began construction in reliance on the February Email because it commenced construction prior to the February Email as evident by a "Notice of Commencement" dated January 2, 2018 wherein KRG expressed its intent to begin construction on the property (Doc. 30-14). *See Templeton v. Kansas Parole Bd.*, 6 P.3d 910, 913 (Kan. Ct. App. 2000) (holding that reasonable reliance did not exist where the acts allegedly undertaken in reliance on a promise predated the promise).

For all the foregoing reasons, the Court grants summary judgment in favor of Spirit on KRG's promissory estoppel claim.

**E.    Spirit Is Entitled To Summary Judgment on KRG's Unjust Enrichment Counterclaim.**

KRG alleges that "Spirit was unjustly enriched when KRG conferred a benefit on Spirit in the form of rent payments, improvements, and occupancy at the restaurant locations." (Resp. at 8–9.) KRG also identified "business losses" as damages relating to its unjust enrichment claim. (Interrog. at 10:1–3.)

Under Kansas law, the elements of an unjust enrichment claim are: "(1) a benefit conferred upon the defendant by the plaintiff; (2) an appreciation or knowledge of the benefit by the defendant; and (3) the acceptance or retention by the defendant of the benefit under such circumstances as to make it inequitable for the defendant to retain the benefit without payment of its value." *Haz-Mat Response, Inc. v. Certified Waste Servs. Ltd.*, 910 P.2d 839, 847 (Kan. 1996). Similarly, under Oklahoma law, "[u]njust enrichment is a condition which results from the failure of a party to make restitution in circumstances where it is inequitable; *i.e.* the party has money in its hands that, in equity and good conscience, it should not be allowed to retain." *Harvell v. Goodyear Tire and Rubber Co.*, 164 P.3d 1028, 1035 (Okla. 2006).

Here, Spirit argues that KRG's claim for unjust enrichment fails as a matter of law because the underlying issues are the subject of the Lease and/or Contribution Agreement. (Mot. at 15.) Moreover, Spirit argues that because KRG was obligated to pay rent and taxes and occupy the properties based on the terms of the Lease, these actions "have a pre-existing justification and cannot now be described as inequitable." (*Id.* at 16.) Lastly, Spirit argues that it was "never enriched by KRG's unspecified 'business losses' and thus such losses cannot be recovered against Spirit." (*Id.*) In response, KRG maintains that "[i]f the [C]ourt finds on summary judgment that no contract existed governing the payments made to Spirit in negotiation of the Third Amendment, and thus an absence of legal remedy, KRG should be able to recover through a claim of unjust enrichment." (Resp. at 8.) Without providing any meaningful analysis or citing any legal authority, KRG maintains that it should nonetheless be able to recover against Spirit for rent payments, improvement expenditures, and occupancy at the restaurants under a claim of unjust enrichment. (Resp. at 8–9.)

The Court again finds in favor of Spirit. Given that the underlying facts of the unjust enrichment claim are governed by the Lease and Contribution Agreement, there is no absence of a remedy at law and thus the claim fails as a matter of law. *See Harvell*, 164 P.3d at 1035 ("Where the plaintiff has an adequate remedy at law, the court will not

ordinarily exercise its equitable jurisdiction to grant relief for unjust enrichment."); *Horton v. Bank of America, N.A.*, 189 F. Supp. 3d 1286, 1290 (N.D. Okla. 2016) (granting summary judgment against a plaintiff's claim of unjust enrichment because a valid contract governed the dispute and a breach of contract claim provided an adequate remedy at law). Additionally, there is either no "unjust" enrichment or no "enrichment" at all. As noted by Spirit, the payment of rent and occupancy are subjects of the Lease, which KRG agreed to. Moreover, the improvements and reimbursements therefor are subjects of the Contribution Agreement, which KRG agreed to. Thus, any "enrichment" Spirit derived from rent payments, occupancy of the properties, and improvements was not "unjust" because they were subject to terms and conditions set forth in agreements that both parties agreed to. Lastly, KRG has not shown that Spirit was "enriched" by its purported business losses. As such, KRG's unjust enrichment counterclaim fails and the Court grants summary judgment in favor of Spirit.

### F. There Are Remaining Matters That Will Be Resolved At Trial.

Regarding its breach of contract claim (Compl. ¶¶ 23–27), Spirit moved for summary judgment only on the issue of liability but not on the issue of damages. Thus, the issue of damages for the breach of contract claim will proceed to trial. Additionally, Spirit's remaining claim for breach of the covenant of good faith and fair dealing (*Id.* ¶¶ 28–31) will proceed to trial if not voluntarily dismissed. Lastly, because Spirit has prevailed on the issue of liability for its breach of contract claim, it need not pursue its unjust enrichment claim (*Id.* ¶¶ 32–37), which it plead in the alternative, and thus the Court dismisses it.

**IT IS THEREFORE ORDERED** granting Plaintiff Spirit's Motion for Summary Judgment (Doc. 29) on its claim for breach of lease (contract) (Compl. ¶¶ 23–27) and on Defendant KRG's counterclaims for breach of contract (Countercl. ¶¶ 21–25), breach of the covenant of good faith and fair dealing (*Id.* ¶¶ 26–30), promissory estoppel (*Id.* ¶¶ 31–34), and unjust enrichment (*Id.* ¶¶ 25–41).

. . . .

. . . .

**IT IS FURTHER ORDERED** that the remaining issues, as detailed in this Order, shall proceed to trial, and the Court will set a pre-trial conference by separate order.

Dated this 18th day of February, 2020.

_____
Honorable John J. Tuchi
United States District Judge